# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **E.D. and M.D.**

**No. 20-0511** (Cabell County 19-JA-132 and 19-JA-133)

**FILED**

**December 10, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother J.B., by counsel Eric B. Anderson, appeals the Circuit Court of Cabell County's May 28, 2020, order terminating her parental rights to E.D. and M.D.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Raymond A. Nolan, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her a post-adjudicatory improvement period and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Prior to the initiation of the instant proceedings, petitioner was the subject of child abuse and neglect proceedings with regard to seven older children based upon her involvement with men who physically and sexually abused her children. Petitioner was granted a post-adjudicatory improvement period but eventually voluntarily relinquished her parental rights to those children at disposition in January of 2016.

Given the extreme circumstances surrounding petitioner's prior abuse and neglect proceeding, the DHHR filed the instant child abuse and neglect petition against petitioner in June of 2019, following the birth of child M.D. According to the DHHR, in light of petitioner's past history with violent men, it conducted a background check of the father which revealed his

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

conviction of death of a child by a guardian in 2002. There was evidence that that child had been beaten in the head or shaken. The father was sentenced to forty years in prison and was later released on parole in 2016. Neither petitioner nor the father disclosed his conviction to the caseworker. Child Protective Services ("CPS") workers also spoke with a service provider in the home who stated she did not have specific concerns about abuse or neglect but noted that E.D. was developmentally delayed, still drinking from a bottle, failing to walk properly, and behind on verbal skills for a child of her age. Later that month, the DHHR filed an amended petition based upon the facts underlying petitioner's prior abuse and neglect proceeding and the father's past conviction. Petitioner waived her preliminary hearing and moved the circuit court for supervised visits, which it granted.

In July of 2019, the circuit court held an adjudicatory hearing wherein petitioner and the father stipulated to the allegations contained in the petition and the court adjudicated them as neglectful parents. The DHHR opposed granting either parent an improvement period due to the extreme circumstances and requested that the matter be set for disposition. The guardian requested additional time to review the father's conviction and petitioner's prior abuse and neglect proceedings before making a recommendation. The circuit court deferred decisions on granting any improvement periods and required that each parent submit to a parental fitness evaluation.

Petitioner participated in a parental fitness evaluation in September of 2019. The report indicated that petitioner was "reluctant to admit to minor fault," was overly defensive, and had poor motivation for treatment. The report further indicated that even if petitioner had no prior knowledge of the father's past criminal history, she "demonstrate[d] impaired judgment by remaining involved . . . with him [after she learned of the conviction]." The report noted that petitioner "appeared to minimize her history of domestic violence" when interacting with CPS caseworkers and that she did not comply with an improvement period granted in prior abuse and neglect proceedings. The psychologist concluded that petitioner's prognosis for minimally adequate parenting was poor due to her history of minimizing domestic violence, persistent involvement in relationships that create risk of injury to the children, continued involvement in her current relationship, impaired judgment, and defensiveness.

After multiple continuances, the circuit court held a final dispositional hearing in February of 2020. At the hearing, the DHHR presented its court summary, which recommended the termination of the parents' parental rights based on the circumstances underlying the prior proceeding, the father's conviction, and petitioner's parental fitness evaluation. First, petitioner testified and confirmed that she knew the father had a criminal history but said she did not know the details. Petitioner also testified that they had broken up four months prior and that she filed a domestic violence petition against him one month before the hearing due to threats of physical violence. She testified the domestic violence was recent and that the father had slapped her three months ago. Petitioner further testified she was no longer financially supporting him and that she was employed as a full-time manager at a local fast food restaurant. Petitioner acknowledged her prior relinquishment of parental rights to seven other children and stated at that time she was not in the right state of mind to care for those children due to abuse from a past husband. She testified that she was in a better mental state now and had raised E.D. for fifteen months without issue. Finally, petitioner reaffirmed that she did not know of petitioner's violent history until CPS workers brought it to her attention; she also admitted that she had never had therapy or treatment

for her issues with domestic violence. Next, a CPS worker testified that petitioner had a history of cohabitating with physically abusive partners who threatened the children. The caseworker acknowledged that the parents' visits with the children were going well until petitioner filed a domestic violence petition against the father. However, as a result of petitioner's failure to correct the circumstances since the prior proceedings, the DHHR was seeking termination of her parental rights. Finally, the guardian spoke in support of petitioner receiving an improvement period.

After hearing the evidence, the circuit court found that petitioner had prior opportunities to correct her circumstances and that her prior history was a "strong indicator" to consider. The circuit court also found that petitioner continued to associate with inappropriate partners, failed to seek domestic violence treatment, and, by her own admission, did not meaningfully participate in her improvement period from her prior abuse and neglect proceeding. Accordingly, the circuit court denied petitioner's motion for an improvement period and terminated her parental rights upon finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse or neglect in the near future and that termination was necessary for the children's welfare. Petitioner appeals the May 28, 2020, dispositional order terminating her parental rights.[2]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying her a post-adjudicatory improvement period. Petitioner contends that she met her burden of proof in demonstrating that she was likely to fully participate in an improvement period. According to petitioner, she divorced one of the children's fathers from the prior abuse and neglect proceeding, was in her relationship with the father of M.D. and E.D. for two years without incident of domestic violence, later filed a domestic violence petition, moved out of their joint home, and found employment in an undisclosed location in order to protect herself. Petitioner also argues that prior to the child's removal, she had successfully cared for E.D. for fifteen months and continued to have successful

---

[2]The father's parental rights were also terminated below, and he has not filed an appeal. The permanency plan for the children is adoption by a foster family.

visits during the abuse and neglect proceedings. Based upon her initiative to take care of E.D. on her own accord, petitioner contends that she demonstrated a substantial change in circumstances since her prior abuse and neglect case and that she should have been granted an improvement period. We disagree.

This Court has held that "a parent charged with abuse and/or neglect is not unconditionally entitled to an improvement period." *In re Emily*, 208 W. Va. 325, 336, 540 S.E.2d 542, 553 (2000). West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period."[3] "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the . . . parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). However, the circuit court has discretion to deny an improvement period when no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002).

Contrary to petitioner's argument, we find that she did not demonstrate that she was likely to fully participate in an improvement period. While petitioner points out that she eventually filed a domestic violence petition against the father, she continued to associate with the father even after CPS informed her of his prior conviction for death of a child by a guardian. Further, the circuit court found that the circumstances underlying petitioner's prior abuse and neglect proceeding were still present in the current proceedings. Indeed, the instant case was initiated just three years after the prior abuse and neglect proceedings ended, during which time petitioner failed to make any substantial changes in her behavior despite the provision of numerous services through her improvement period in the prior case. Indeed, by petitioner's own admission, she failed to comply with the terms and conditions of the prior improvement period, ultimately prompting her decision to relinquish her parental rights. Finally, petitioner's prognosis for minimally adequate parenting was rated as "poor" in her parental fitness evaluation. Given this evidence, we find no error in the circuit court's decision to deny petitioner a post-adjudicatory improvement period.

Petitioner next argues that the circuit court erred in terminating her parental rights. Petitioner claims that the circuit court's finding that there was no reasonable likelihood that she could correct the conditions of abuse or neglect in the near future was erroneous because she had properly parented E.D. for fifteen continuous months without evidence of abuse and neglect. Petitioner contends that, given this evidence, there was a reasonable likelihood that she could substantially correct the conditions of abuse and neglect. Petitioner also argues that the circuit court erred in refusing to impose a less-restrictive alternative to the termination of her parental rights. We disagree.

West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse

---

[3]Notably, West Virginia Code § 49-4-610(2)(A) requires a parent to file "a written motion requesting the improvement period." According to the record, petitioner failed to file such a motion.

can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help."

The record establishes that petitioner demonstrated an inadequate capacity to solve the problems of abuse or neglect either on her own or with help. As noted above, petitioner was granted a post-adjudicatory improvement period in her prior case and was provided with services aimed at correcting her issues with allowing inappropriate partners around the children. Petitioner was permitted to relinquish her parental rights at disposition in that case and thereafter continued entering into inappropriate relationships such that it endangered the children at issue in these proceedings. While petitioner eventually filed for a domestic violence protection order and ceased her relationship with the father, she continued to remain with him for several months even after learning of his prior conviction for death of a child. Moreover, petitioner's parental fitness evaluation noted that her prognosis for obtaining minimally adequate parenting was poor and she was overly defensive and reluctant to admit to even minor fault. While petitioner points out that she appropriately cared for E.D. for over a year prior to the proceedings, the record demonstrates that the child was developmentally delayed, and petitioner allowed the father to care for the children unsupervised while she worked to financially support him and the children. Further, by continuing to engage with inappropriate partners, petitioner has demonstrated that the conditions from the prior abuse and neglect proceeding continue unabated. Based on this evidence, we cannot find that the circuit court erred in finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse or neglect in the near future, as petitioner demonstrated an inadequate capacity to solve her issues of impaired judgment on her own or with help.

While petitioner claims that she should have been granted a less-restrictive disposition to the termination of her parental rights, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Based on the foregoing, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 28, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**:  December 10, 2020


**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison